AMES IRON WORKS *v.* RICHARDSON.

Decided January 30, 1892.

*Conditional sale—Right of vendor—Estoppel.*

> A vendor of personal property who reserves title until the purchase money is paid does not waive his right to retake the property upon default by advising a creditor of his vendee with knowledge of the reservation to take a mortgage of the property.

APPEAL from *Lawrence* Circuit Court.
JAMES W. BUTLER, Judge.

STATEMENT BY THE COURT.

The Ames Iron Works brought this action against Richardson & Co. and M. E. Beavers to recover possession of an engine, boiler, saw-mill, a pair of Jones' scales, a Pratt gin and condenser and a cotton press. Plaintiff alleged in its complaint that it was the owner and entitled to the possession of the property sued for, and that the defendants unlawfully detained the same. The property was delivered to the plaintiff, except the gin, condenser and scales, which were delivered to the defendants by the sheriff upon their giving bond to retain possession.

Richardson & Co. answered the complaint, and denied that plaintiff was the owner of the property sued for, and that they (Richardson & Co.) were in possession of the gin, condenser, press and scales; and averred that they were entitled to the possession of the engine, boiler, plantation sawmill and belting and shafting sued for, by virtue of a mortgage executed to them by J. P. Faulks, who was at the time the owner of the same; and that said mortgage was executed by Faulks and accepted by them at the instance and request of an agent of plaintiff; and that it was duly and legally acknowledged and filed for record, and was in full force and effect. The defendants, Richardson and Beavers, answered, admitting that they were in possession of the gin, press, condenser and scales, and denying that the plaintiff is the owner thereof, but averred that they were the owners of the same.

Upon the trial plaintiff, to maintain the issues on its part, read as evidence two promissory notes which purported to have been executed by J. P. Faulks, in which it was stated that they were given for property of the description of that sued for, and in which it was stipulated that the title to the property mentioned therein should remain in plaintiff until the notes were paid in full. Both of these notes were dated the 19th of September, 1888, and one was for the sum of $133.20 and was due and payable on the 15th of November, 1888, and the other was for the sum of $436 and was due on the 15th of December, 1888. Resting on these notes, without any evidence of the execution thereof by Faulks, or that the property therein described was the property in controversy, or that the plaintiff sold the same to Faulks, plaintiff closed his evidence.

J. W. Richardson, on behalf of the defendants, testified substantially as follows: He was one of the defendants and a member of the firm of Richardson & Co. In 1887 Faulks came with J. L. Adair and "put up a gin," and bought a Pratt gin and condenser, and scales from Sam Howell. In February or the spring of 1888 he (witness) and Beavers

bought the gin, condenser, press and scales from Faulks and one Russell. Russell sold out to Faulks. Adair, acting as agent for Thomas W. Baird, visited him. Adair then testified substantially as follows: "He was acting as traveling salesman for Thomas W. Baird, who sold machinery. Baird was an agent of plaintiff. He (Adair) took these notes. It was a resale. He did not sell the machinery the first time. Richardson, then resuming, testified further: "Russell and Faulks owed me $317. I wanted my money. Adair said Faulks had paid $100 on the machinery, and advised me to pay Baird's debt and take a mortgage on the machinery, and said that Faulks was not owing Baird very much on it. I told him I thought Faulks had property outside, and I thought I could make my money easier by attachment. He stayed all night with me, and the next morning I started to go to town to take out the attachment. He told me it would be better for me not to do it, and went into his saddle-bags and took out his list of claims to satisfy me about the amount of indebtedness on the machinery. My recollection is it was about $282. Faulks had paid $100 the evening before. Adair did not have the notes with him. He said he would see Faulks and make him secure me. I agreed to wait until he could go up and see Faulks. In a short time Faulks came down with Adair. Faulks said he had decided to give me the mortgage, and Adair asked me to give Faulks as much time as I could on the debt. Adair told Faulks that he would hold up on him until he could pay me, and he should go ahead and pay me as soon as he could. We agreed on the time of the payment, and the mortgage was executed. In the middle of September Adair told me that Faulks had surrendered the machinery and wanted to buy it back, but he did not know what Mr. Baird would do about it. About a week later I saw Adair and he said he had sold the machinery back to Faulks, and had taken notes therefor like the old ones, except that the payments were made easier. My debt against Faulks and Russell was for supplies for the mill. The boiler and engine

have been taken from me. They were worth $500 or $600."

Beavers testified: " I received a 'letter from Mr. Baird saying Faulks never owned the machinery, and it was his and for sale at $850. I bought the press, gin and scales from Faulks, and he bought them from Sam Howell. I did not know the machinery was not paid for. I offered to buy the scales from Adair after I learned he had a claim on it. He did not seem to claim anything but the scales."

It was admitted that Richardson's mortgage was dated June 14, 1888, and duly recorded, and that plaintiff's notes were dated September 19, 1888.

Adair, in behalf of the plaintiff, then testified: " I told Mr. Richardson that $280 was all my note sheet showed then, but he had better write to the house. He told me afterwards Mr. Baird claimed $800 or $900. I saw Faulks and told him that he must do something for Richardson. I asked him why he did not fix up with Richardson, and he said Richardson wanted a mortgage on the machinery, and I said we could not waive any rights. Faulks gave the mortgage and told Richardson the machinery belonged to Baird till it was paid for. I notified Richardson we had a claim on the machinery, and tried to get him to take it up. Faulks did not pay, and I resold the machinery to Faulks and took notes similar to the old ones. We took possession of the machinery and resold it to him. We never agreed to waive our title to it. He paid us $100 before the mortgage was taken. I took the machinery and resold it to him, taking new notes payable at different times. Notes were like these. These are the notes I took at the resale."

The result of the trial was a verdict as follows: " We, the jury, find for the defendants and fix the value of said mill and attachments and other mill property at $550." A judgment upon this verdict was rendered in favor of Richardson & Co., a firm composed of J. V. Richardson and F. W. Tucker, against the plaintiff for the saw mill and attachments and other mill property; and it was adjudged

by the court that if this property was not returned, the defendants recover of plaintiff and its sureties the sum of $550. No mention is made in the judgment of the property delivered by the sheriff to the defendants; none was rendered in favor of Richardson and Beavers, who claimed it; and none was rendered in favor of Richardson & Co. therefor because they did not claim it.

Plaintiff moved for a new trial on the ground that the verdict was contrary to the evidence, which was denied; and it appealed.

*J. M. Rose* for appellants.

1. This was a conditional sale, and the title of the vendor can be enforced against any one, even an innocent purchaser. 47 Ark., 363; 48 *id.*, 160; 49 *id.*, 63.

2. There is no proof of waiver by the vendor of his rights.

*Williams & Shinn* for appellees.

1. The main question is, did Adair, as the agent of plaintiffs, act in such manner as to lead defendants to believe the vendor's lien would be waived. This is the reasonable conclusion to be drawn from the facts proven. The question was submitted to a jury, and they so found. Conditions may be waived, and a title which was conditional may become absolute by waiver on compliance with conditions. One who invites another to act or refrain from acting, to his loss or injury, is estopped to deny the validity of a right arising out of a state of things he has induced. Herman on Estoppel, secs. 765–770, 776–7, 779, 811, 837, 921, 929; 14 Ark., 21; 11 *id.*, 630; 14 *id.*, 530; 23 *id.*, 32; 17 *id.*, 385; 19 *id.*, 671; 17 *id.*, 498; 23 *id.*, 61; 51 *id.*, 475.

BATTLE, J., after stating the facts as above reported.

The evidence was by no means full, explicit and complete, but enough was shown to make it appear that the property claimed and recovered by Richardson & Co. in this action was conditionally sold by appellant to Faulks, and that the title to the same was reserved by the vendor until the pur-

chase money was fully paid; that notes were taken for the purchase money and never paid; that subsequently Richardson & Co. took a mortgage on it to secure a debt that Faulks and Russell owed to them; and that after this appellant took possession of the property under the power retained in the notes previously given for the same, and thereafter resold it to Faulks and took the notes, which were read as evidence, for the purchase money, and retained the title to the property in itself until the notes were fully paid. According to this state of facts appellant became entitled to the possession of the property when Faulks failed to pay the notes at their maturity. But it is contended that appellant waived its right to the property when Adair advised and urged Richardson & Co. to take a mortgage on it to secure them. But there is no evidence of a waiver. Richardson testified that when the propriety of taking the mortgage was discussed, Adair took from his saddle-bags his note sheet and showed to him what was then due on the machinery. From this it appears that appellant was claiming all that was due it on the property, and relinquished nothing. The fact that Adair advised the taking of the mortgage was no waiver. Faulks had an interest he could mortgage. *Dedman* v. *Earle*, 52 Ark., 164. There was nothing in the taking of the mortgage inconsistent with the rights of the appellant. Both could co-exist. Richardson & Co. do not pretend to say that appellant led them to believe that the title to property was in Faulks, or that it waived any right in any manner, except by advising them to take the mortgage. This was the only fact, it seems, relied on by them to defeat a recovery by the appellant. No other evidence was adduced to show a waiver. This being true, there was no evidence to sustain the verdict.

The judgment of the circuit court is therefore reversed, and the cause is remanded for a new trial.